Tommaso. Good morning, Your Honors. My name is Thomas Eddy. I'm appearing of counsel to Lori Cohen, who's CJA counsel to the appellant Frank Di Tommaso. This appeal had its genesis at the intersection of the Internet and the Fourth Amendment, an evolving segment of cyber law where the courts and defense counsel are challenged to keep up with the rapid pace of technological change. In seeking remand to the district court on the agency issues, we view this case as about the unintended consequences of less than fully informed decisions. The appellant used Internet service providers, well-known AOL, and the more obscure Omegle, which is a chat site that pairs anonymous users to talk about whatever topics. And in order to use these sites, Omegle doesn't require even a password or an ID, and he didn't realize when he was using them that he was going to be construed as having waived his, surrendered all his Fourth Amendment rights in searching procedures. If Omegle is not a government actor, then the Fourth Amendment has nothing to do with it, right? Well, what was never decided in this case because it was really decided without a hearing was whether or not the National Center for Missing and Exploited . . . That's something else. I mean, that's another entity, but you're talking about Omegle, and the head of the kind of material is to protect their own reputation and not because the government forces them to or even asks them to. Well, that's true, Your Honor, but the majority of the NCMEC reports that established probable cause were really generated by AOL, and . . . Well, let's turn to AOL. And AOL, the district court never decided whether or not AOL was a private actor or a government agent. The court didn't reach it because the court held that your client consented to the terms, and among the terms is that they can search. Well, we believe that that conclusion was clearly erroneous, Your Honor, because there was absolutely no evidence whatsoever presented to the district court about how our client may have consented to the terms. There's no evidence that he had knowledge. In the cyber law context, the courts recognized two types of user agreements, what they call a click-wrap agreement where somebody has to, after reading terms, or has to at least click that they have read the terms, or another . . . Did you make this argument in the district court? We never got that far, Your Honor. I mean, it repeatedly . . . Well, I mean, the argument that you would have had to click on it. What happened, Your Honor, was this was decided without a hearing and on affidavits alone. I mean, you have papers . . . Well, there was no evidence . . . I mean, there was no evidence of how he . . . The district court just simply concluded it's obvious that he consented on no evidence whatsoever. There was nothing presented in any government affidavit about how he may have rendered consent. There was nothing presented about how these sites even work. There was a motion. Were any papers submitted on the motion? There's a motion to suppress. Yes, and there was no affidavit by appellant about anything. Only the government explained its side of the case, and it didn't fully explain its side of the case. The district court just simply assumed that he had consented, and I mean, there's absolutely no evidence anywhere to support it. So, and because the judge made that . . . the district court made that decision, she neglected to reach the issues of whether . . . Did you seek a hearing on that point, a reconsideration or something? No. Well, appellate counsel was not trial counsel. We . . . I mean, I understand that. Yes. No. No. You still have to . . . No. Well, what I would point the court to is that over and over again, trial counsel complained of an information vacuum or an information void and sought a hearing and discovery, and the government opposed those requests, and ultimately, the district court made a decision without having a hearing, and I believe on less . . . I mean, simply her decision that there was consent shows that she was less than fully informed about, you know, what really happened here, and, you know, normally this court reviews a more well-developed record, and what we would really like to do is just have a chance to, you know, make all these arguments once comprehensively and have a court decide them, rather than everybody . . . you know, basically right now, there's been assumption after assumption, and without anybody reaching the actual evidence, so . . .  Well, I mean . . . I mean, there are other defenses the government might raise that the agents acted in good faith on the understanding that they had a valid warrant in order to . . . It was signed. The warrant was signed. Yes, it was. That usually is enough for good faith, unless they misled . . . unless the government misled . . . I think they have a duty . . . . . . the judicial officer. I agree, Your Honor. I believe that they have a duty to fully disclose, and I don't believe that they fully disclosed to the magistrate court that NCMEC . . . first of all, its role in the case at all in amassing probable cause, and secondly, that NCMEC had been found by other courts to be an agent of the government. So absent that information, I'm not sure that the magistrate could have made a decision. Because NCMEC is involved in every one of these cases nationwide, it's the National Clearinghouse . . . The warrant only deals with what was found in the search of the house, correct? There were a number of warrants. There were warrants to the internet service providers, and there was a warrant to search the apartment as well. But we're talking about the warrant to search the apartment. Yes. So . . . So that is other and additional evidence . . . that is other evidence additional to what was found by AOL and OMEGLE. Yes. Our argument is that the NCMEC reports tainted the probable cause finding, that there was insufficient probable cause. Once you excise the NCMEC reports from the probable cause affidavit, in a evidence case where the source of the prior information was a 13-year-old girl who was seemingly disturbed, who identified appellant, but at the time she identified appellant as the perpetrator, she was herself a target of the investigation. I mean, the police just went to her . . . you know, she hadn't been identified as a victim at that point. The police went to her house and were seeking to find who downloaded and uploaded child pornography from the internet, and in the course of that investigation they arrived at the conclusion that it was the girl and her computer, and at that point she's, I'm sure, a 13-year-old, never had any exposure to police. She's looking to shift blame, and, you know, she named appellant as the person who made her do all of this. And the other connections in the probable cause affidavit only go to the apartment. They don't go to appellant individually, and as the Court is probably aware, there was another person who was the co-signer on the phone that was used for the Skype chats that generated the probable cause information, was . . . he confessed to the crime himself after trial. Marcus. Marcus. Marcus, yes. And there was no hearing on that either, although Judge Caproni denied the Rule 33, she hadn't been the judge that presided at the trial, and, you know, given the fact that somebody in a wholly circumstantial evidence case confesses to the crime, we think there should have been a hearing on that issue. And with that, I will still sign. We'll hear you on rebuttal. May it please the Court. My name is Kimberly Ravner, and I represent the United States on appeal in addition to having represented the United States at trial. First, with respect to G. Tommaso's challenge to the searches, he did not argue that Nick Mick was a government actor responsible for the unlawful searches before the district court, and that claim is waived. At a minimum, his argument should be subject to plain error review by this Court, but G. Tommaso's argument would fail under any standard of review for at least three reasons. First, there was no Fourth Amendment violation because the evidence at issue was obtained through private searches conducted by private companies driven by private business purposes. Well, I mean, your adversary is challenging that. I mean, there's no finding that AOL does not work at the behest . . . does not conduct these searches at the behest of the government. Your Honor, I believe . . . It doesn't matter whether they do or not. Your Honor, the record does demonstrate that that issue need not be reached  AOL with respect to direct evidence of the charged crimes. The evidence actually used from AOL came from user-generated complaints, not any search conducted by AOL. So that's one factual distinction on the record. In addition, the testimony available in the affidavit that was submitted to the district court set forth a sufficient basis for the district court to determine and for this court to determine that AOL was acting based on its private business purposes and not at the direction of law enforcement. The consent of the defendant to . . . We don't have a finding to that effect because the court never reached it, I believe. That's right, Your Honor. The court decided on the alternative ground that the defendant had consented to AOL's terms of service. Where's the evidence of that? I mean, AOL has terms of service, but usually they become binding by pressing a little button that says consent. I know most people just press the button because they want to get the service, but they press it nevertheless. And there's a reason for the button, and I'm not sure there's any evidence that Mr. DiTomaso pressed it. That evidence is not in the record, Your Honor. However, the reason . . . If it's not in the record, then it's not evidence. Your Honor, whether or not Mr. DiTomaso clicked on the terms of service specifically is not in the record, because Mr. DiTomaso did not raise that argument below, and that argument is therefore also waived before this court. But you didn't raise it in your briefs. You didn't charge, you didn't raise the issue of waiver in your briefs, so maybe you waived the waiver. Your Honor, in either respect. I mean, this whole thing is getting to be like some kind of an invisible case, where everything seems to be waived and the waivers are waived. Your Honor, there are multiple other reasons why the court can still determine that that evidence does not present a basis for appeal here. One is that the district court's own finding, which is that by using the services, the defendant implicitly consented to the terms of service. But putting that issue aside- Do we have a case that says that? Not at this time, Your Honor. No, and it wasn't reached by the district court, and we would probably have to remand in order to deal with it on that basis. Why don't you head to some basis for, support your argument, we should affirm on the present record. Your Honor, again, one of the reasons is that there is no real search by AOL that's at issue in this case, and that's for two reasons. One is that the evidence actually presented at trial that was at issue in the suppression motion consisted of user generated complaints. That is, other private citizens making reports about Mr. DeTomaso's conduct. No matter if AOL was a government agent, because these people are not. Correct, Your Honor. And then AOL passes them along to NCMEC? That's right, Your Honor, and NCMEC serves as a clearing house to pass that information forward to law enforcement. There is no evidence in this record that NCMEC conducted any search that exceeded the scope of the, whatever search to the extent one could even be found to have been conducted by the internet service providers here. NCMEC merely recorded the information provided to it. Your argument, it doesn't matter what NCMEC did, because the argument was waived as to whether NCMEC was a government actor. We're arguing both positions, Your Honor. First, that it was waived, but also that in addition, there's no evidence that NCMEC conducted a search. We believe that, again, whether or not that needs to be reached should be reviewed. Whether or not there's any error should be reviewed under the plain error review standard. But I'd like to emphasize one other point, if I may, Your Honor, which is harmless error. Because any error in the admission of the America Online and Omegle evidence at trial was clearly harmless for several reasons. One is that that evidence largely did not pertain to count one of the indictment, which charged child production of child pornography and represented the higher count at trial. And even setting aside the disputed evidence, the overwhelming evidence supported DeTomaso's guilt on count two as well, which charged distribution of child pornography. Even putting aside the AOL evidence and the screenshots showing DeTomaso distributing child pornography over Omegle on three different dates. The evidence also included screenshots showing DeTomaso distributing child pornography over another anonymous chat website, chat random, on two other occasions, either one of which- Distributing, you mean he invited the 13 year old girl to send him something? No, Your Honor, that's a distinct count. So the conduct with respect to the 13 year old child victim related to the production of child pornography. And that was count one of the indictment. Count two of the indictment was a wholly separate offense, which involved DeTomaso's streaming or distribution of child pornography videos over the Internet. And that was demonstrated through the Omegle evidence, which the appellant is challenging, but also through at least two chats over a separate website that the appellant has not challenged. A website called Chat Random, which essentially is also another anonymous platform, very similar to Omegle. Additional evidence in support of that count, count two, the distribution, included data from Roundup, a law enforcement program, showing that IP addresses linked to DeTomaso's apartment distributed child pornography over peer-to-peer networks on multiple occasions in late 2013. Some within days of the chat random screenshots, and one of the Omegle screenshots. Cell site evidence and Xbox records corroborating DeTomaso's presence in his apartment at the times of those distributions. And other evidence seized from forensic examinations of DeTomaso's Xbox, including search terms like kiddie porn or child massage, and other evidence seized from his home. Your Honor, I'd like to also just raise one other point with respect to the court's questions regarding consent. When it comes to Omegle, the record does show, as Mr. K Brooks testified in the suppression hearing, that at least in 2013, by around February, I believe, Omegle instituted a separate mode and gave users the choice to operate in an unmoderated section. So we do have evidence in the record that DeTomaso did not choose the unmoderated section when available, at least with respect to the December 2013 Omegle chat. And that's important because that evidence consisted of 30 different screenshots. If Omegle is not a government actor. And correct. Finding that it's not based on the testimony of the executive who found it and ran it. Yes, Your Honor, and we would urge the government, excuse me, we would urge the court to reach that conclusion as the district court did. If the court has no further questions, the government will rest on its brief. Briefly, Your Honors. With respect to preservation, the original motion to suppress on the agency theories, while it didn't name NCMEC specifically, it did cite cases from the first circuit, both United States versus Cameron and United States versus Keith. Where NCMEC had either been found in the district court decision in Keith to be a government actor or to be, while it wasn't a holding in Cameron, the first circuit suggested at least that it believed that NCMEC was a government actor. Is that central to this case? Well, if we're talking about preservation, if we're talking about whether the issue was presented to the district court, we relied on cases in which NCMEC was found to be an agent, all right? I mean, trial court's argument was he only specifically named AOL and Omegle, but he also, in a footnote there and in another letter, said, listen, I don't really understand what happened here. And that's why I want to have a hearing. So I don't think he really knew the role that NCMEC had played because it wasn't disclosed in the affidavits for probable cause. It was really pretty much hidden until after the suppression decision was made. And then with respect to, all right, the allegation that probable cause was established solely on user complaints from AOL. There were, out of seven NCMEC reports, two were from users about the same single incident. Two others were by AOL themselves, and three were from Omegle. The question is, what about what was used as evidence? Used as evidence at trial? Yes, yes. At trial, because they had the consent issue, they went even broader at trial, and there were NCMEC reports generated from AOL from 2007 and 2008 before. That were not user complaints. No, they were not user complaints. Well, you're making an affirmative statement, but you're putting a question mark at the end of it. I don't recall exactly, Your Honor, but I'm pretty sure that they were not user complaints. We'll check. Thank you. Thank you. Thank you both. We'll reserve decision.